THE STATE OF WASHINGTON, *Respondent*, v.. RICHARD DANIELS, *Appellant.*

*Mark E. Vovos,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* for respondent.

GREEN, C.J.—Defendant appeals from a conviction of perjury in the first degree. He asserts the court erred in (1) refusing to dismiss the perjury charge because the testimony offered by the state was insufficient to prove the materiality of the perjured testimony; and (2) determining the question of materiality without having the entire record of the previous proceeding before it. We find no error.

The crime of perjury in the first degree is defined in RCW 9.72.010 as follows:

> Every person who, in any action, proceeding, hearing, inquiry, or investigation, in any of which an oath may lawfully be administered, shall swear that he will testify, . . . truly, . . . and who, in any such action . . . shall state or subscribe as true *any material matter* which he knows to be false, shall be guilty of perjury in the first degree . . .

(Italics ours.) Any other false testimony is perjury in the second degree as defined in RCW 9.72.030.

 The materiality of the false testimony is a question of law for the court to decide. *State v. Carpenter,* 130 Wash. 23, 28, 225 P. 654 (1924). In *Carpenter,* the court discussing the test of materiality, said at page 26:

> It has generally been held by the courts and text writers that testimony upon which a charge of perjury may be based need not necessarily be concerning, nor directly relevant to, issues made by the pleadings, but it is sufficient for that purpose if it is material to any question that may properly arise in the trial of the case. It has also generally been held that perjury may be based on testimony going to the credibility of a witness, and this even though such testimony is legally immaterial or ought not to have been received. The gist of the rule laid down by the authorities is very well stated in 22 A. & E. Ency. Law 687, as follows:
>
> "The test of materiality is whether the statement could have influenced the tribunal upon the question at issue before it. Any statements made in a judicial proceeding for the purpose of affecting the decision, and upon which the judge acted, are material. The matter sworn to need not be directly and immediately material. It is sufficient if it be so connected with the fact directly in issue as to have a legitimate tendency to prove or disprove such fact by giving weight or probability to the testimony of a witness testifying thereto, or otherwise.
>
> "Perjury may be assigned upon false statements affecting only a collateral issue, as the credit of a witness, this being material to the main issue. Thus where, for the purpose of testing his credit, a witness is asked on cross-examination whether he has ever been in prison for crime or convicted of a felony, the question is material, and a false answer constitutes perjury. But perjury cannot be assigned on the testimony of a witness on cross-examination affecting only his credit, where his evidence on direct examination was immaterial."

*See* 3 R. Anderson, *Wharton's Criminal Law and Procedure* § 1309-12 (1957); 60 Am. Jur. 2d *Perjury* § 11 (1972). RCW 9.72.020 provides:

> It shall be no defense to a prosecution for perjury in

the first degree that the defendant did not know the materiality of his false statement or that it did not in fact affect the proceeding in or for which it was made. *It shall be sufficient that it was material and might have affected such proceeding.*

(Italics ours.)

The perjury charge in the instant case arose from the following facts. In January 1971, defendant was tried and acquitted of the crime of carnal knowledge alleged to have been committed between August 1 and August 31, 1970. In that trial, he testified under oath that Lynette Daniels, who became his wife on October 24, 1970, moved in and lived with him during the entire month of August 1970; that she lived in his apartment continuously during that time; was there every night, and that Lynette Daniels was the only one that ever occupied his bed except a girl who slept with Lynette one night because of a fight with her boyfriend. Defendant denied any improprieties with the prosecuting witness and stated he never spent any time alone with her in his apartment. Lynette Daniels testified and confirmed the defendant's testimony. Subsequently, the prosecuting attorney learned that Lynette Daniels was not in Spokane during August 1970 and in fact never met the defendant until September 1970. As a consequence of this discovery, defendant was charged with perjury in the first degree, tried and convicted.

In the perjury trial, defendant's entire testimony in the carnal knowledge trial was read into the record by the court reporter. Lynette Daniels, who stated her name was really Sandra Bowman, testified that she was not in Spokane during the month of August 1970, but was in Minnesota. Her testimony gives a detailed account of her activities during August in Minnesota. She testified that she hitchhiked to Spokane with her husband, John Bowman, arriving on September 5, 1970. Disinterested witnesses confirmed her presence in Minnesota throughout the month of August. The court reporter in her testimony listed by name the seven witnesses for the prosecution and the seven wit-

nesses for the defendant in the carnal knowledge trial. From her examination of that testimony, the court reporter testified that four of the prosecution's witnesses stated that Lynette Daniels was not in Spokane and four of the defendant's witnesses stated she was in Spokane during August 1970. Following this testimony, the state called James Bell, an investigator for the Spokane County prosecutor's office. He testified that he was present throughout the carnal knowledge trial and heard defendant's counsel[1] argue to the jury that Lynette Daniels was present in Spokane during August 1970 and related her presence to the issue of carnal knowledge by stating:

A . . . You have all had a chance to see both ladies in question, the complaining witness, so you can see who is very unattractive, and his attractive wife, and you can imagine anyone having to do anything with this complaining witness.

Based upon this record, the trial court ruled that defendant's testimony as to the presence of Lynette Daniels in Spokane during August 1970 was a material matter in the carnal knowledge trial and submitted the issue as to its falsity and defendant's knowledge thereof to the jury. We agree with the trial judge's ruling regarding the materiality of defendant's testimony and the submission of the issue to the jury.

The record shows that the presence or absence of Lynette Daniels in Spokane was a subject of conflicting testimony by 8 out of the 14 witnesses who testified for both sides on the carnal knowledge charge. Defendant's testimony in the carnal knowledge trial that Lynette Daniels occupied his bed every night during the month of August 1970 provided the base for argument by defense counsel that considering the attractiveness of his wife and unattractiveness of the prosecuting witness, it was highly unlikely defendant was involved with the latter. This argument was an obvious attempt to create reasonable doubt as to the

---

[1]Defendant had the same trial counsel on both charges—carnal knowledge and perjury; however, he has different counsel on appeal.

defendant's guilt. We conclude defendant's testimony was material because in the language of *Carpenter*, " 'the statement could have influenced the . . . [jury] upon the question at issue before it.' " *See* RCW 9.72.020.

Defendant's contention that the entire record in the carnal knowledge trial should have been admitted in the perjury trial on the issue of materiality is without merit. The testimony introduced by the state was not refuted by the defendant. It is not necessary that the false testimony bear directly upon the ultimate issue to be material; it is sufficient if it is material to any question that may properly arise in the trial of the case and that may affect the decision on the issue involved, *State v. Carpenter, supra.* There is no doubt that the defendant's false testimony *may have affected* the jury's decision on the issue of his guilt in the carnal knowledge trial. This fact was proved conclusively without the entire record, which record of the proceeding was unnecessary to determine whether the defendant's false testimony may have affected the jury's determination.

Moreover, the offer of proof by the defendant, who presented no defense, does not show how the introduction of the entire record would have established the immateriality of the false testimony. Furthermore, defendant's testimony in the carnal knowledge trial and the confirmation thereof by Lynette Daniels, if false, clearly affected their credibility as witnesses and for this additional reason was material to the main issue, namely, the defendant's guilt or innocence. *State v. Carpenter, supra.*

Judgment affirmed.

MUNSON and McINTURFF, JJ., concur.

Petition for rehearing denied April 18, 1974.

Review denied by Supreme Court June 24, 1974.