[Nos. 1263-3; 1265-3; 1606-3.     Division Three.     December 24, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN PHILLIP HANSON, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. EUGENE HORACE THOMASON, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. JOHN PHILLIP HANSON, *Petitioner*.

*Gregory L. Lutcher, Freise & Lutcher, Donald W. Schacht* and *McAdams & Schacht,* for appellants and petitioner (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for respondent.

MUNSON, J.—Each defendant appeals from his conviction of two counts of perjury in the first degree.[1] This opinion consolidates the appeals and John Phillip Hanson's petition for a writ of certiorari to review a denial of his request for bond pending appeal. We affirm the convictions as to one count of perjury against each defendant, dismiss as to the second count of perjury as against each defendant, and deny the petition for writ of certiorari.

Defendants contend the trial court erred in: (1) denying their motion to dismiss for failure of the State to prove a prima facie case; (2) denying their motion to dismiss for failure to comply with CrR 3.3(c); (3) denying their mo-

---

[1] RCW 9.72.010 provides:

"Every person who, in any action, proceeding, hearing, inquiry, or investigation, in any of which an oath may lawfully be administered, shall swear that he will testify, declare, depose, or certify truly, or that any testimony, declaration, deposition, certificate, affidavit, or other writing by him sworn to or affirmed or subscribed as true, and who, in any such action, proceeding, hearing, inquiry, or investigation shall state or subscribe as true any material matter which he knows to be false, shall be guilty of perjury in the first degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years."

tion for change of venue; (4) admitting testimony of a witness regarding a statement made to him by one of the defendants; (5) denying defendants' motion for mistrial based upon a comment made by the prosecutor during closing argument; and (6) failing to give several of defendants' proposed instructions. The petition for writ of certiorari contends the trial court erred in failing to set bond pending appeal, even though petitioner is an inmate of the penitentiary, because he would have been eligible for parole on prior convictions during the pendency of this appeal.

At all times pertinent, both defendants were inmates of the Washington State Penitentiary. On April 12, 1974, Michael Thomas Ede, another inmate at the Washington State Penitentiary, was convicted of first-degree murder which had occurred in the office of the resident government council within the institution on October 25, 1973. Both Eugene Thomason and John Hanson testified in behalf of Ede at that trial; based upon their testimony, they were each charged with two counts of perjury in the first degree. They entered a preliminary appearance on May 15, 1974, and were brought to trial July 22, 1974, 67 days following their preliminary appearance.

1

■ Both defendants contend the trial court should have granted their motion to dismiss because the State failed to produce sufficient evidence to support a prima facie case of perjury. The sufficiency of evidence required under such charge is set forth in *State v. Buchanan*, 79 Wn.2d 740, 744, 489 P.2d 744 (1971):

> " 'There must be the direct testimony of at least one credible witness, and that testimony to be sufficient must be positive and directly contradictory of the defendant's oath; in addition to such testimony, there must be either another such witness or corroborating circumstances established by independent evidence, and of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. Otherwise the defendant must be acquitted.' "

*State v. Wallis*, 50 Wn.2d 350, 311 P.2d 659 (1957); *State v. Rutledge*, 37 Wash. 523, 79 P. 1123 (1905).[2]

The critical words pertinent to this appeal are: "direct testimony" and "positive and directly contradictory." Both defendants were charged with falsely testifying that Michael Ede was locked in Hanson's cell no later than 1:30 p.m. on October 25, 1973. (Thomason testified he had locked Ede in with Hanson). There was no direct testimony that Ede was not locked in Hanson's cell at that time, nor that Thomason had not locked him in. Mr. Ede did not testify in this trial.

There was testimony that at 1:45 p.m. Michael Ede was seen stabbing his victim at least twice while in the office of the resident government council located in another building. Thus, the issue is whether the testimony that Ede was elsewhere than in Hanson's cell meets the quantum of positive and directly contradictory testimony sufficient to submit the case to the jury.

Our cases, while discussing various aspects of the quantum of proof and types of evidence which will and will not meet that quantum, do not answer this specific issue. Since *People v. Chadwick*, 4 Cal. App. 63, 87 P. 384 (1960), the California courts have held:

> Direct, as distinguished from circumstantial, evidence of the falsity of the defendant's testimony by at least one witness is generally required. This does not mean that there must be a denial in the very words of the defendant's testimony but that there must be testimony by at least one witness furnishing direct evidence of facts contrary to, or absolutely incompatible or physically inconsistent with, that sworn to by the accused.

(Footnote and citations omitted.) *People v. Roubus*, 65 Cal. 2d 218, 221, 417 P.2d 865, 53 Cal. Rptr. 281, 283 (1966).[3]

[2]Additionally, before testimony can be the subject of perjury, it must be given under oath, relate to a material matter and be knowingly false. *State v. Daniels*, 10 Wn. App. 780, 520 P.2d 178 (1974).

[3]There is some dissatisfaction with the technical rules of evidence evolved, and perjury prosecutions in several jurisdictions do allow

■ As noted, there is testimony placing Ede at the scene of the murder at the time these defendants testified he was locked in Hanson's cell. Thus, there is direct evidence of facts contradictory to those testified to by the defendants which would make it physically inconsistent with the defendants' testimony. There is ample circumstantial evidence to support the balance of the rule. We find no error as to count 1 as charged against each of these defendants.

In count 2, Hanson is charged with testifying falsely that Ede cut himself across the palm, when a glass jar slipped from his hand, while locked in Hanson's cell. The State contends Ede sustained the cuts while stabbing his victim. A physician testified Ede had a sharply delineated laceration on his left little finger, a clean cut on his left ring finger and two sharp cuts on his left hand between the index finger and thumb; that Ede had indicated to him the cut was caused by a razor blade; and, in his medical opinion, while the cut could possibly have resulted from broken glass, he believed it was the result of a sharp-edged instrument.

No one testified directly, and with positive contradiction, to the manner in which the cut occurred. There is ample circumstantial evidence to support a belief that Ede sustained the cuts during the knifing; but without the proof directly and positively contradicting the defendant Hanson's testimony, this charge cannot be upheld.

Thomason is charged in count 2 with falsely testifying he did not intend to be an alibi witness for Mr. Wade, Ede's cellmate and codefendant on the murder charge. When Wade's trial had proceeded to the conclusion of the State's case, he pleaded guilty to murder. Hence, he put on no

proof of circumstantial evidence alone, if guilt is established beyond a reasonable doubt. *See Marvel v. State*, 33 Del. 110, 131 A. 317, 42 A.L.R. 1058 (1925); *Wolford v. Commonwealth*, 218 Ky. 420, 291 S.W. 366 (1927); *State v. Cerfoglio*, 46 Nev. 332, 205 P. 791, 213 P. 102, 27 A.L.R. 848 (1922); Annot., 88 A.L.R.2d 852, 874 (1963). But Washington is with the majority in following the rule quoted from *State v. Buchanan, supra*.

defense. The State contends the denial by Thomason at Ede's trial that he contemplated being an alibi witness in the Wade trial is material because the defense of both Wade and Ede, prior to Wade's plea, was going to be different than the defense actually espoused after Wade pleaded guilty. Because of Wade's plea, the anticipated defense, *i.e.*, that they were going to the prison barbershop at 1:30 p.m., October 25, 1973, was no longer sustainable and required a factual adjustment. The sole basis for this charge turns, however, on whether Thomason knew he was going to be an "alibi" witness—admittedly he knew he was going to be a defense witness. The State contends no one with Thomason's penal history, who has testified in two previous murder trials in which inmates were the defendants, would not know what an *alibi witness* is. The word "alibi" is one used by the prosecution. It appears on pretrial discovery documents and in the prosecutor's questioning at trial. At no time did Thomason use the term. This use of the adjective was not material to the Ede trial. The weight and credibility of Thomason's testimony on Ede's behalf might have been influenced by his responses to these questions, but it was not of sufficient materiality to allow it to support a perjury charge. *State v. Wallis, supra; State v. Carpenter*, 130 Wash. 23, 28, 225 P. 654 (1924); *State v. Daniels*, 10 Wn. App. 780, 520 P.2d 178 (1974).

Thus, we affirm the convictions of both defendants as to count 1 of the respective informations and reverse and dismiss the charges set forth in count 2.

2

■ The defendants' contention that the court erred in failing to dismiss because they were not tried within 60 days, CrR 3.3(c), is without merit. Prior to being charged, these defendants were incarcerated in the penitentiary on previous convictions. As set forth in *State v. Keith*, 13 Wn. App. 127, 534 P.2d 128, *aff'd*, 86 Wn.2d 229, 543 P.2d 235 (1975), an individual who is incarcerated because of prior conviction unrelated to the charges then brought against him may not avail himself of the provisions of this rule, but

is subject to the provisions of CrR 3.3(b) requiring that he be brought to trial within 90 days following his preliminary appearance.

3

█ Defendants contend that pretrial publicity, accompanied by the fact that the defendants were inmates in the state penitentiary, denied them the opportunity for a fair trial in Walla Walla County; a change of venue was required. Granting of a change of venue is a matter within the sound discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. *State v. Braun*, 82 Wn.2d 157, 509 P.2d 742 (1973). In *State v. Crudup*, 11 Wn. App. 583, 587, 524 P.2d 479 (1974), we set forth nine elements generally to be considered by the trial court in determining the propriety of an order granting or denying a motion for a change of venue based on alleged prejudicial pretrial publicity.[4] This record does not contain voir dire of the jury, the manner of jury selection, nor whether government officials were involved in the release of pretrial publications. We are unable, therefore, to review elements 4, 5, 6, 7 and 9 as set forth in *State v. Crudup*, *supra*. A review of the newspaper articles contained in the transcript convinces us, however, that the contents of the articles are not so inflammatory as to have prejudiced the position of the defendants. *State v. Brown*, 31 Wn.2d

---

[4]"Common criteria or factors generally utilized by courts in determining the propriety of an order granting or denying a motion for change of venue based on alleged prejudicial pretrial publicity are: (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn. Annot., 33 A.L.R.3d 17, 33 (1970). *See also Pretrial Publicity-Fair Trial*, Annot., 10 L. Ed. 2d 1243 (1964)."

475, 197 P.2d 590, 202 P.2d 461 (1948). No abuse of discretion is found.

4

Defendant Hanson contends the court erred in admitting a statement attributed to him by a witness during the trial. The court later reversed its decision and instructed the jury to disregard the statement, which was to the effect that Hanson "told me I was lying and I better tell the truth." Defendant Hanson's objection at the time of trial was that the statement was irrelevant because made subsequent to the time of the alleged crime. On appeal, Hanson contends it portrayed him as one attempting to coerce a witness. This contention will not be considered because it was not argued before the trial court. *State v. Jacobsen*, 78 Wn.2d 491, 477 P.2d 1 (1970). Furthermore, we conclude upon review, the answer was not so inherently prejudicial, even though the accusation was perjury, that Hanson was denied a fair trial. The instruction to disregard should have cured whatever error existed. *State v. Miles*, 73 Wn.2d 67, 436 P.2d 198 (1968); *State v. Suleski*, 67 Wn.2d 45, 406 P.2d 613 (1965).

5

The defendants contend reversible error was committed by the prosecutor, during his closing arguments, when he commented that it was his belief the defendants had lied. The prosecutor contends the comment was invited; his statement was not an expression of his personal opinion of the defendants' guilt, but only his opinion that they were lying; and further, that the adversary system of justice is best achieved when two adversaries vigorously present their case in order to ferret out the truth.

The impropriety of a prosecutor expressing his personal opinion in closing argument needs no citation. Whether counsel was invited to comment by his opponent's argument in this case is best ascertainable during the closing arguments, rather than on the face of this record. Inflection, diction and delivery are difficult to evaluate from the typewritten page. The contention that the statement

went to the prosecutor's personal belief that the defendants were lying and not to their guilt is not persuasive. The prosecutor's capsulization of the adversary system overlooks the necessity to keep those proceedings within the bounds of propriety and within the application of rules governing such proceedings, including final argument. After careful examination of the record, including final argument, we conclude defendants were not denied a fair trial. *State v. Green*, 71 Wn.2d 372, 428 P.2d 540 (1967).

6

█ Defendants contend the court erred in failing to give certain of their proposed instructions. We find that the court's instruction No. 13 provided ample basis from which they could argue their theory of the case. No more is required. *State v. Dana*, 73 Wn.2d 533, 439 P.2d 403 (1968).

7

█ As to the petition for writ of certiorari, John Phillip Hanson contends the trial court abused its discretion by not setting bond pending appeal. We disagree. In *State v. Smith*, 84 Wn.2d 498, 527 P.2d 674 (1974), the court stated there is no constitutional right to bail pending appeal; it is a procedural matter governed in its entirety by the provisions of CrR 3.2(h).[5] Hanson contends the court erred in failing to enter a finding as required by CrR 3.2(h) that "the defendant may flee the state or pose a substantial danger to another or to the community." Admittedly, no such finding was entered. The trial court did state, however: "Your record is such that I believe the court would be subjected to just criticism if it were to set bail for you at this time." The record presented to the trial court was one of conflict, *i.e.*, statements from the bail bondsmen who had provided bonds in the past stated that Hanson had always appeared when notified; yet the record showed that on two

---

[5] "A defendant (1) who is charged with a capital offense, or (2) who has been found guilty of a felony and is either awaiting sentence or has filed an appeal, shall be released pursuant to this rule, unless the court finds that the defendant may flee the state or pose a substantial danger to another or to the community. If such a risk of flight or danger exists, the defendant may be ordered detained."

occasions Hanson had attempted to escape the minimum security building at the penitentiary while serving his present term. Although the court did not technically comply with the rule by entering a finding specifically stating that these individuals might flee or pose a danger to the community, based upon the record before us and the statement made by the trial court, we readily infer such to be the conclusion of the trial judge. We find no abuse of discretion nor misapplication of the provisions of CrR 3.2(h). We would call to the attention of the trial judges the requirement for entering a finding and strongly urge compliance therewith.

Judgment is affirmed as to the judgment entered on count 1 against both defendants; count 2 against both defendants is hereby dismissed; and the writ of certiorari is denied.

McINTURFF, C.J., and GREEN, J., concur.

Petitions for rehearing denied February 3, 1976.

Review denied by Supreme Court March 16, 1976.