**Mr. and Mrs. Robert BROOME**

v.

**Whitney "Pete" SIMON, Francis Meaux, J. D. Hanks, Jr., Essie Primeaux, Euda Delcambre, Elton Elzy alias Alton Mouton and Trinity Universal Insurance Company.**

**Civ. A. No. 11258.**

United States District Court
W. D. Louisiana,
Lafayette Division.

Sept. 2, 1965.

On Motion to Dismiss March 18, 1966.

**436**

------

Simon, Trice & Mouton, J. Minos Simon, Lafayette, La., for plaintiffs.

O. H. Deshotels, Jr., Kaplan, La., for Elton Elzy.

Charles M. Thompson, Abbeville, La., for Euda Delcambre.

Davidson, Meaux, Onebane & Donohoe, T. J. McNamara, Lafayette, La., for Trinity.

William Harris McBride, Lafayette, La., for Whitney "Pete" Simon, J. D. Hanks Jr., Francis Meaux and Essie Primeaux.

Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for Richard A. Smallwood, Special Agent, FBI, and United States of America.

## MEMORANDUM OPINION

PUTNAM, District Judge.

An affidavit to recuse the judge having been filed in this matter pursuant to 28 U.S.C. § 144, 28 U.S.C.A. § 144; the motion was heard and denied, with oral reasons assigned in open court. Counsel for plaintiffs having announced an intention to apply for writs, we now supplement these reasons in writing for the record. If writs are sought, the necessity of response by the Court may be obviated. On the other hand, if no action is taken, the views of the court on the subject should be recorded.

The suit purports to be laid under the Civil Rights Acts, 42 U.S.C.A. § 1983 and 1985, and is against the sheriff of Vermilion Parish, the mayor and chief of police of the city of Kaplan, and other officials. In a supplemental petition filed August 26, 1965, plaintiffs have alleged that agents of the Federal Bureau of Investigation have been actively engaged in conspiracy with the local officials originally made defendants in the suit, to the end of discrediting petitioner Robert Broome and depriving him of his right to "peaceful association with members of his society", i. e., the people of the community in which he lives, and his good reputation. Plaintiffs seek injunctive relief against all prosecutions against him in the state courts, and seek damages against all defendants and the United States in excess of $1,000,000.00.

Mr. Bertrand DeBlanc, District Attorney of the Fifteenth Judicial District of Louisiana, is alleged in this supplemental petition, to have committed wrongful acts against plaintiff Robert Broome in his official capacity, by consulting with the state and local officials and agents of the Federal Bureau of Investigation involved in respect to some of the alleged charges advanced against Broome by them. DeBlanc is not named as a defendant.

The affidavit of bias sets out the following facts upon which the conclusion of prejudice by the judge is predicated:

(a) That the judge told Mrs. Francis Gilfoil, an assistant to Mr. DeBlanc, that she did not have to appear as a witness in response to a subpoena for her deposition, and that if she failed to appear: "he, the said Judge Putnam, would not hold her in contempt of court;"

(b) That in a former case, No. 9742–L, Western District of Louisiana, Paul Schexnayder v. Elton Arceneaux and Bertrand DeBlanc, where DeBlanc was named as a defendant "the said Judge Putnam voluntarily recused himself in respect to said litigation and affiant verily believes on information that the said recusation voluntarily entered was induced by a personal bias in favor of the said Bertrand DeBlanc, which Judge Putnam held at that time and that said personal bias continues at this date."

(c) While not expressly stated, it may reasonably be inferred that the alleged bias in favor of DeBlanc arises by virtue of the fact that he acted as assistant district attorney when the judge occupied the office of district attorney now held by him. These facts are alleged in the motion accompanying the affidavit.

In passing upon this affidavit as is my duty, the record of the case will further reflect that suit was filed on July 22, 1965, when I was absent on a brief vacation. An application for a temporary restraining order was denied by Judge Hunter. Plaintiff's counsel stated in his letter of transmittal that he would be away until August 17th and requested that the "preliminary hearing" be fixed for sometime after August 20th. It was fixed by this judge to be heard on application for a preliminary injunction on August 30th.

Thus, in this embryonic state of the litigation, it has developed into a veritable miasma of motions, countermotions, charges of contempt, etc., so that, as it matures it promises to become a most vexatious and burdensome case. The judge would be most happy to be relieved of the task which lies ahead.

■■■ The law in such cases, however, is clear. 28 U.S.C.A. §§ 144, 455. The facts stated in the affidavit must be accepted as true. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 S.Ct. 481 (1921). This case further stands for the basic proposition that the judge against whom the affidavit is made should himself act upon it.

It is the duty of the judge, when the facts of the affidavit standing alone, justify it, to refrain from continuing to act in the case. It is equally his duty to deny the affidavit on insufficient grounds as to allow it on sufficient allegations. To do this, the judge must be satisfied in his own mind and conscience that the complaining party will be afforded fair trial. Berger v. United States, supra; Edwards v. United States, 334 F.2d 360 (5 Cir. 1964); Simmons v. United States, 302 F.2d 71 (3 Cir. 1962); In re Union Leader Corporation, 292 F.2d 381 (1 Cir. 1961), cert. den. 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190; Tucker v. Kerner, 186 F.2d 79 (7 Cir. 1950); Alaska Bar Association v. Dickerson, 240 F.Supp. 732 (D.C.Alaska 1965); United States ex rel. Brown v. Smith, 200 F.Supp. 885 (D.C.D.Vt.1961); United States ex rel. Rogers v. Richmond, 178 F.Supp. 44 (D.C.D.Conn.1958); United States v. Gilboy, 162 F.Supp. 384 (D.C.M.D.Pa.1958), petit. for writ of mandamus denied sub nom.; Green v. Murphy, 259 F.2d 591 (3 Cir. 1958); In re Federal Facilities Realty Trust, 140 F.Supp. 522, (D.C.N.D.Ill.1956); United States v. Valenti, 120 F.Supp. 80 (D.C. D.N.J.1954); United States v. Shibley, 112 F.Supp. 734 (D.C.S.D.Cal.1953) Sanders v. Allen, 58 F.Supp. 417 (D.C. S.D.Cal.1944), appeal dismissed, 151 F.2d 534 (9 Cir. 1945).

With regard to the statement that Mrs. Gilfoil was informed by the Court that she could go on a trip which she had planned and would not be held in contempt, and that this was done in a telephone conversation to me at my home, this is true, but incomplete. I have related orally to the best of my recollection the substance of that telephone conversation, and this summation includes facts not stated on the face of the affidavit, consequently they are not considered here.

■■■ The court had the inherent power and authority to modify or even to quash the subpoena issued to Mrs. Gilfoil. 28 U.S.C.A., F.R.Civ.P. Rules 30 (b), 45(b), if in the opinion of the Court it was required to protect the witness from "annoyance, embarrassment or oppression". See Haney v. Woodward & Lothrop, Inc., 330 F.2d 940, 942 (4 Cir. 1964). The fact that, as alleged in plaintiff's motion, the Court told her she could leave on her vacation and under these circumstances he would not hold her in contempt, and that this was done by verbal request was error on the part of the Court. The proper mode of procedure would have been by written motion. It

would also be required that notice of the action so taken be given plaintiff's attorney, which was not done.

The Court must state that the actions of Mrs. Gilfoil, who is herself an attorney and as such an official of the Court, was an imposition upon the Court, and her failure to notify plaintiff's counsel a breach of professional courtesy. While I dismiss the contempt rule against her because there was no wilful disobedience to the subpoena, I fully reserve the right to deal with this disciplinary problem in due course.

No prejudice has resulted from this error, as the rule for preliminary injunction was continued and Mrs. Gilfoil is available or can be made available to testify at any time in the future. Moreover, informal notice of the facts was given to counsel on August 13th, as appears from the motion now before us. The judge's assumption that there was no serious objection to the procedure has certainly been demonstrated to be erroneous, but this falls far short of a showing that there is personal prejudice against plaintiffs.

■ The fact that in a prior case the judge recused himself voluntarily, under 28 U.S.C.A. § 455, where Mr. DeBlanc was a defendant, does not, in my opinion, demonstrate any personal prejudice against Broome or his wife or in favor of defendants. His belief that this is so, as stated in his affidavit, is simply erroneous and is not a matter of fact such as would compel recusal. Even if it were true, Mr. DeBlanc is not a party to this case, as is required by 28 U.S.C.A. § 144.

I now elaborate on my alleged "personal relationship" with Mr. DeBlanc. My term as District Attorney of the Fifteenth Judicial District of Louisiana terminated in 1954. Mr. DeBlanc is considered by me to be a personal friend. Whether this would be to his advantage or disadvantage even were he a defendant in this case is a matter of conjecture, which I now eliminate by stating emphatically that where this court's judicial function begins, personal likes and dislikes end. See United States v. Gilboy, 162 F.Supp. 384, pp. 399, 400 for collection of authorities in this field, and Simmons v. United States, 89 F.2d 591 (5 Cir. 1937), cert. den. 302 U.S. 700, 58 S. Ct. 19, 82 L.Ed. 540.

It must be said that I, like every other judge, claim personal friendship with many officials and people in the area. There would be very few cases upon which a judge would be qualified to sit if this were ground for recusation.

As I stated in Open Court, the Schexnayder case was not controlled by consideration of the fact that defendants were personal friends of the judge and the Court was prejudiced in their favor. The Court is not called upon at this time to elaborate further on the action taken in the former case, this is not relevant to the present motion.

There is no prejudice in the mind of this Court against Mr. and Mrs. Broome, nor is there any prejudice in favor of any defendants, prospective defendants or any witnesses which would influence my judicial actions in this case. In fact, the record will show that up to the filing of the present motions, all rulings of the Court have been favorable to plaintiffs, according to my appreciation of the circumstances and law involved in each instance, with exception of the Gilfoil incident.

My conviction is that I cannot, in good conscience, recuse myself from the trial of this case, and I must decline to do so.

RULING ON MOTION TO DISMISS

Plaintiff originally filed this suit against defendant, Whitney "Pete" Simon, Chief of Police of the city of Kaplan, Francis Meaux and Essie Primeaux, Policemen, Elton Elzy, alias Alton Mouton, a Negro resident of the city of Kaplan, J. D. Hanks, Jr., Mayor of the City of Kaplan, and Euda Delcambre, Sheriff of the parish of Vermilion, Louisiana, alleging certain violations of his civil rights and invoking the jurisdiction of this court under Title 28 U.S.C.A. §§ 1331, 1343(3), (4), Title 42 U.S.C.A. §§

1981, 1983, and 1988. Injunctive relief was also sought under Title 28 U.S.C.A. §§ 2281 and 2284.

Plaintiff's complaint arose out of an altercation which took place on the night of July 7, 1965 at the Joy Theater operated by plaintiff, Robert Broome, when, it is alleged, the defendant Elzy (or Mouton) created a disturbance at the plaintiff's place of business. It is noted that complainant is a white man and Mouton is a Negro. As alleged in plaintiff's petition, the acts complained of occurred as a result of the events which followed, for which damages are sought against the local officials. Plaintiff Robert Broome, was ultimately arrested and placed in the Vermilion Parish jail which is located at Abbeville, the parish seat.

Following filing of the complaint on July 22, 1965, and the answers of all defendants, plaintiff sought to take the deposition of various persons including the defendants and some of their agents and also including an agent of the Federal Bureau of Investigation stationed at Lafayette, Louisiana. On motion timely filed, the subpoena for the deposition of the F.B.I. agent was quashed.

On August 26, 1965, petitioner Robert Broome, filed a supplemental complaint wherein he alleged that, since his illegal arrest and incarceration as recited in his original complaint, he has been informed that agents of the F.B.I. acting within the scope and course of their employment for the United States of America have entered into a conspiracy with the defendants originally named and others to deprive him of rights, privileges and immunities secured to him by the Constitution of the United States, among such rights being the right to and privilege of privacy, right to the peaceable enjoyment of life and liberty, right to public confidence and good repute, right not to be falsely accused of crimes and the right not to be maliciously scandalized and denigrated. Plaintiff further avers that, *since the false arrest and false imprisonment arising from circumstances recited in his original complaint,* these agents have consulted actively with Whitney "Pete" Simon, Chief of Police in Kaplan, that they have, while acting in their official capacity, maliciously slandered and scandalized plaintiff by informing various unnamed citizens of Vermilion Parish that plaintiff was a dangerous criminal, that there was a dangerous criminal ring operating in Vermilion Parish of which plaintiff was a member, that they have advised citizens of Vermilion Parish to remove any cash monies from their homes because of the danger of being robbed by this criminal ring or syndicate, and they have made other slanderous, false and untrue statements concerning plaintiff and his activities.

It is also alleged that the F.B.I. Agents have invaded his privacy by demanding and receiving from one Turnley, who operates the Kaplan telephone exchange, records of all telephone calls made by the said Robert Broome for a period of at least four months.

The government has moved to dismiss the suit against the United States for failure to state a claim and for an order staying the defendant's response to interrogatories propounded to it with plaintiff's supplemental petition. The government's motion is predicated upon the fact that the suit is one to which the United States has not consented and the doctrine of sovereign immunity applies, and that it is not maintainable under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2680(h).

Plaintiff argues that the suit is maintainable under 28 U.S.C.A. § 1346(a) (2), and also under the Federal Tort Claims Act. He argues additionally that fundamental constitutional rights have been invaded by the Federal Agents in question acting in the course and scope of their employment and that as a result of this action he has been damaged in his property and business to the extent of $1,000,000.00 and that such conduct on the part of the United States is actionable as a violation of the fundamental law.

In support of his position, plaintiff cites Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Logan v. United States, 1892, 144 U.S. 263, 12

S.Ct. 617, 36 L.Ed. 429; Hatahley v. United States, 1956, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065; Harmon v. Brucker, 1958, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503; Reynolds v. Sims (1964), 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and other cases which we do not find to be applicable to the facts alleged in this complaint.

■■ The government's motion must stand. It is well settled that the United States cannot be sued without its consent conferred by statute. None of the civil rights statutes upon which the original action in this case is predicated, expressly or inferentially, authorize suit against the United States. It is clear that the United States cannot be considered to be a person as those words are used in these acts. Cf. Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; United States ex rel. Lee v. State of Illinois, 7 Cir. 1965, 343 F.2d 120; Hewitt v. City of Jacksonville, 5 Cir. 1951, 188 F.2d 423, cert. den., 342 U.S. 835, 72 S.Ct. 58, 96 L.Ed. 631.

■ Moreover, the complaint against the United States does not allege the invasion of any federally protected right by the officers of the Federal Bureau of Investigation. There is certainly no invasion of plaintiff's Fourth Amendment privileges by the request made of the Telephone Company to examine records of telephone calls made by Broome, which records are unquestionably the property of the Telephone Company kept by it for the purpose of billing the plaintiff for services rendered. They are generally held to be admissible in evidence in order to establish a connection between a defendant and some other person, when properly identified. If the third party should refuse to permit an examination of such books and records by an investigating officer, they would be subject to subpoena. See United States v. First National Bank of Mobile, D.C.Ala.1924, 295 F. 142, affirmed 45 S.Ct. 231, 267 U.S. 576, 69 L.Ed. 796, pertaining to bank records and United States v. Austrew, U.S.D.C.Md., 1962, 202 F.Supp. 816, affirmed 4 Cir., 317 F.2d 926; United States v. Laughlin, D.C.1964, 226 F.Supp. 112, pertaining to records of telephone calls.

■ The remaining allegations set out acts which, if taken as true, would constitute nothing more than the tort of slander committed by the agents in question against the plaintiff. As such, the action falls within the exception to the Federal Tort Claims Act, unmistakably expressed in 28 U.S.C.A. § 2680(h).

■ Our conclusion is that the United States may not be sued under the Civil Rights Act, as it is not a person and, further, that it may not be so sued without its consent. As to the doctrine of sovereign immunity see authorities collected note 12, p. 61, Wright, Federal Courts, West, 1963; 91 C.J.S. United States § 176. Moreover, since the complaint clearly alleges that the agents were acting within the scope and course of their employment, the suit is void even as to them as individuals under the doctrine recently elucidated in the cases of Wheeldin v. Wheeler, 1963, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605; Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Norton v. McShane, 5 Cir. 1964, 332 F.2d 855, cert. den. 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274, and United States v. Faneca, 5 Cir. 1964, 332 F.2d 872, cert. den. 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268.

For the foregoing reasons, the motion to dismiss filed in behalf of the United States is granted and the United States is further relieved from answering the interrogatories propounded to it and attached to plaintiff's supplemental complaint.